STATE OF MAINE

ANDROSCOGGIN, SS.

RECEIVED & FILED

APR 2 5 2000

ANDROSCOGGIN
SUPERIOR COURT

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-98-140

TEL· A·*~ 4 /b~ /b·?~?
DONALD L. GARBRECHT
LAW LIBRARY

APR 28 2000

HAHNEL BROS. CO.,

Plaintiff

v.

WILLIAM BELL III,

Defendants

DECISION AND JUDGMENT

Hahnel Bros. Co. is a corporation based in the Lewiston-Auburn area and for many decades has maintained an industrial roofing and sheet metal ventilation business. It was operated for many years by Oscar Hahnel but at all times relevant to this case has been managed by his son, Alan Hahnel, in his capacity of corporate president.

M.B. Bourne was a similar business based in the Portland area, but did not do sheet metal ventilation work. Its principals were Wilbur Bell II (Wilbur) and his son Wilbur Bell III (Bill). Bourne operated its business from real estate and buildings held by B&B Equipment Supply Co. (B&B) in South Portland. B&B was operated by Bill Bell.

Although Hahnel Bros and M.B. Bourne were competitors, the senior members, Oscar Hahnel and Wilbur Bell, maintained professional, personal and social friendships.

···· ·· GARBRECHT
··· Y L·BRARY

·· ·· 2000

In the early 1990's, Bourne was experiencing financial troubles when Casco Bank failed to renew a $300,000 line of credit. Bill Bell, who had taken over management of Bourne from his father, conferred with Oscar Hahnel for advice and help. In order to assist his friends and to gain an increased presence in the lucrative Portland market, Oscar Hahnel, on behalf of Hahnel Bros., entered into a deal with Bill Bell in January of 1992.

The "deal" that was entered into was never detailed in writing to formalize or memorialize the obligations of either party. Nevertheless, the court finds that the relevant terms agreed to by the parties are as follows:

- Bourne owed a substantial debt to Casco Bank.

- Hahnel Bros. paid $65,000 and received 65% of the Bourne stock.

- Casco Bank refinanced the first mortgage on the South Portland property held by B&B.

- The mortgage to Casco Bank had a balloon payment at the end of five years (February of 1997).

- B&B was obligated to make payments on the loan.

- Hahnel Bros. signed on as a guarantor of the mortgage.

- Hahnel Bros. would handle all necessary administrative matters for Bourne.

- Bourne had a 5 year lease until February of 1997.

- Bourne would continue to operate out of the B&B property in South Portland.

- Hahnel Bros. would pay Bourne's "triple net rent" to Bill Bell as manager of B&B.

- Bill Bell was to make appropriate mortgage payments from the sums paid by Hahnel Bros.

- Bill Bell would continue to manage B&B.

- Bill Bell's salary was reduced from $100,000 to $35,000.

Alan Hahnel and other principals within the management level of Hahnel Bros objected to the plan, but Oscar's position as the corporate head won out. No issue has been raised concerning Oscar's authority to make a commitment for the corporation.

In June of 1993, Bill Bell resigned from his position as general manager of Bourne, for reasons of health, but he continued to manage the real estate interests of B&B. Without an on-site manager it was difficult for Hahnel Bros. to continue to operate Bourne and it ceased operations in late 1996. Hahnel found a substitute tenant for the B&B building and continued to make payments to Bill Bell for the B&B property.

In the interim, the balloon note to Casco Bank was acquired by Key Bank and, in the Spring of 1997, Hahnel Bros. was notified by Key Bank of a default on the B&B mortgage note. Bill Bell did not return calls to Hahnel Bros. and other attempts to contact him failed. Hahnel Bros. had to then pay the mortgage balance of more than $57,000 as the guarantor on the note to Key Bank.

In this action, plaintiff seeks to hold Bill Bell personally liable for the money it paid Key Bank as guarantor. It alleges that as the "alter-ego" of B&B Bill Bell

3

stands in the same position as the corporation and plaintiff is entitled to indemnity (Count I); and, that by failing to pay the mortgage indebtedness from Hahnel's rent he has violated the Uniform Fraudulent Transfers Act, 14 M.R.S.A. § 3575 *et seq.* (Counts II, III, and IV).

Uncontested evidence was presented at trial that Hahnel Bros. has previously recovered judgment against B&B for the deficiency amount. Because that judgment is most likely uncollectible, plaintiff now argues, without citation of legal support or precedent, that because it holds a "valid unresolved judgment against B&B Equipment [it] is entitled to recover that judgment from the [d]efendant here." In the alternative, as an assignee it seeks to enforce the banks rights to payment from B&B versus Bill Bell individually.

Finally, the plaintiff argues that the *Restatement (3rd) of Suretyship and Guarantee* §§ 18-23 allows it to pierce the B&B corporate veil and enforce the guarantee against Bill Bell as a primary obligor. The court finds that on the facts of this case that the plaintiff has not proven that Bill Bell, individually, is an obligor to the extent that he is liable to plaintiffs in any capacity.

What this case boils down to, is Oscar Hahnel's desire and "handshake agreement" to help a friend and to expand into the Portland market. Hahnel Bros. did so without advice of counsel and without any discussion or written agreement or contract as to recourse it might have to protect itself in the event of default.

4

Plaintiff has failed to demonstrate factually or legally any entitlement to indemnification of the default ($57,792) or reimbursement of rent paid ($14,000) and not applied to mortgage payments by Bill Bell after expiration of the lease.

The entry will be:

> Judgment for defendant with costs.

So ordered.

DATED: April 25, 2000

Thomas E. Delahanty II
Justice, Superior Court